UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LINDA LEWEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:11CV1341 JAR |
| VI-JON, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Vi-Jon, Inc.'s Motion to Dismiss (ECF No. 3) and Defendant Vi-Jon, Inc.'s Motion to Strike Plaintiff's Prayer for Punitive Damages (ECF No. 5). These matters are fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Linda Lewey ("Plaintiff") was employed with Defendant Vi-Jon, Inc. ("Vi-Jon") from August 25, 2003 through February 9, 2010. (Complaint ("Compl."), ECF No. 1, ¶9). Plaintiff alleges that Vi-Jon "treated male supervisors and managers more favorably than female supervisors in the terms and conditions of employment, permitted inappropriate and unwelcome sexual conduct in the presence of and directed toward Plaintiff, and failed to compensate employees as required by the Fair Labor Standards Act ['FLSA']." (Id., ¶10). In November 2009, Plaintiff complained to the Director of Human Resources that she was not getting paid for lunch or time worked at home, as required under the FLSA. (Id., ¶20). On January 27, 2010, "Plaintiff and Defendant [Vi-Jon] entered into an agreement whereby Defendant agreed to pay Plaintiff back pay." (Id., ¶23). Just two days later, Vi-Jon suspended Plaintiff on January 29, 2010, and again suspended her on February 4, 2010. (Id., ¶¶25, 26). On February 9, 2010, Vi-Jon terminated her employment. (Id., ¶27). Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights

("MCHR") on August 5, 2010.  (Defendant Vi-Jon's Memorandum in Support of its Motion to Dismiss ("Memorandum"), ECF No. 4, p. 2).

On August 3, 2011, Plaintiff filed this lawsuit, alleging claims for Retaliation in Violation of the FLSA (Count I), Retaliation in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II), Retaliation in Violation of the Missouri Human Rights Act ("MHRA") (Count III), Common Law Wrongful Termination (Count IV), and Interference in Violation of the Family Medical Leave Act ("FMLA") (Count V).  On August 24, 2011, Vi-Jon filed the instant motions to dismiss and strike.

## DISCUSSION

### I.    MOTION TO DISMISS

A.    Standard

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff.  Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)).  Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The complaint must allege facts, which,

when taken as true, raise more than a speculative right to relief. Benton v. Merrill Lynch & Co., 524 F.3d 866, 870 (8th Cir. 2008)(citation omitted).

    B.    Analysis

        1.    Effect of the Agreement and Release on Counts II, III and IV

Vi-Jon moves to dismiss Counts II, III and IV of Plaintiff's Complaint because they are precluded by a prior settlement agreement entered into between Plaintiff and Vi-Jon and cannot give rise to a common law wrongful discharge claim. Plaintiff alleges that she complained of a hostile work environment in October 2009. (Compl., ¶12). Thereafter, Plaintiff executed a settlement agreement that released Vi-Jon from liability for any past wrongful acts. (Id., ¶23). In anticipation of Vi-Jon's defense, Plaintiff alleges that this release was procured by fraud. (Id., ¶24).[1] Vi-Jon contends that Plaintiff cannot assert that the settlement agreement was procured by fraud because she has not pled fraud with the requisite particularity required under Fed.R.Civ.P. 9(b). (Memorandum, p. 4). Rule 9(b) of the Federal Rules of Civil Procedure has long required that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

In response to Vi-Jon's Motion, Plaintiff notes that she did not attach the settlement agreement to the Complaint and, accordingly, argues that the settlement agreement cannot be considered on, or provide a basis for, a Motion to Dismiss. (Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Response"), ECF No. 13, p. 3). Plaintiff also asserts that she has alleged the specifics of the alleged fraud, particularly given that Plaintiff is alleging an omission, not a fraudulent representation. (Id.).

---

[1] Plaintiff alleges that "Defendant procured Plaintiff's apparent assent to the agreement by fraud, namely, Defendant concealed from Plaintiff that Defendant intended to suspend Plaintiff in retaliation for her wage and hour complaint shortly after she entered into the agreement." (Compl., ¶24).

- 3 -

The Court finds that it cannot consider the settlement agreement for purposes of the Motion to Dismiss. The Court notes that a plaintiff "cannot defeat a motion to dismiss by choosing not to attach" to the complaint documents upon which it relies. Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997); Fin-Ag, Inc. v. NAU Country Ins. Co., No. 08-4141-KES, 2009 U.S. Dist. LEXIS 55979, at *6 (D.S.D. June 26, 2009)(citing Stahl v. U.S. Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003) (citations omitted)("in a case involving a contract, 'the court may examine the contract documents in deciding a motion to dismiss.'"). Plaintiff's retaliation and wrongful discharge claims, however, do not rely on the settlement agreement, and the allegations in the Complaint do not necessarily embrace the settlement agreement. See Shqeirat v. United States Airways Group, 515 F. Supp. 2d 984, 992 (D. Minn. 2007) ("Because MAC's police report is not necessarily embraced by the other counts, the Court cannot consider the police report in addressing the merits of the other counts."). The allegation in the Complaint regarding the settlement agreement simply anticipates Vi-Jon's defense. Therefore, the Court cannot rely on the settlement agreement for purposes of the Motion to Dismiss. See also BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 688-89 (8th Cir. 2003) (concluding that consideration of documents by the district court converted the motion to dismiss to a summary judgment motion because the additional documents considered by the court "were neither undisputed nor the sole basis for BJC's complaint").

In any event, the Court finds that, for purposes of this Motion to Dismiss, Plaintiff's claims in Counts II, III and IV are not barred by the settlement agreement. Plaintiff alleges that the settlement agreement was procured by fraud, specifically that Vi-Jon concealed its intent to suspend Plaintiff shortly after she entered into the settlement agreement. (Compl., ¶24). Because the Court must assume Plaintiff's allegation as true, the Court cannot dismiss Counts II, III and IV based upon a settlement agreement allegedly obtained by fraud.

Moreover, the Court finds that Plaintiff's fraud allegations are sufficient under Fed.R.Civ.P. 9(b). Plaintiff's allegation identifies the particularities of the fraud that are known to Plaintiff. Plaintiff states the approximate time frame and the material information that was not provided to her. But because Plaintiff alleges an omission and not a representation, the Court will not require her to plead with the particularity demanded by Vi-Jon. See Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) (Rule 9(b) does not require a complaint to include highly specific allegations "when the facts constituting the fraud are peculiarly within the opposing party's knowledge"); Ash Grove Cement Co. v. MMR Constructors, Inc., No. 10CV4069, 2011 U.S. Dist. LEXIS 10794, 2011 WL 398860 at *1 (W.D. Ark. Feb. 3, 2011) (holding that including the time, place, and contents of statements, even without the names of the specific individuals responsible for the fraud, satisfies the requirements of Rule 9(b)). The Court denies Vi-Jon's motion with respect Counts II, III and IV because an issue of fact exists regarding whether the settlement agreement was procured by fraud.

        2.        Common Law Claim for Wrongful Termination Based Upon Violations of the MHRA and Title VII (Count IV)

The Missouri Supreme Court has "held that 'a statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelops the remedies provided by common law.'" Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 95 (Mo. 2010)(quoting Dierkes v. Blue Cross & Blue Shield of Mo., 991 S.W.2d 662, 668 (Mo. banc 1999)). "A statutory remedy does not 'comprehend and envelop' the common law if the common law remedies provide different remedies from the statutory scheme. Fleshner, 304 S.W.3d at 95 (quoting Dierkes, 991 S.W.2d at 668).

In Count IV, Plaintiff alleges a claim for wrongful termination because she reported violations of Title VII, the MHRA, and the FLSA. (Compl., ¶¶62-66).[2] Vi-Jon claims that Count IV of Plaintiff's Complaint should be dismissed because Plaintiff cannot state a claim for common law wrongful termination based upon violations of Title VII and the MHRA. Rather, Title VII and the MHRA provide the exclusive remedies for her retaliation claims. (Memorandum, pp. 5-7). Vi-Jon asserts that Plaintiff's common law claim for wrongful termination is barred because it does not provide a greater remedy than under Title VII and/or the MHRA. (Id.). With respect to the MHRA, Vi-Jon asserts that the MHRA provides for the same remedies available at common law, as well as attorneys' fees. (Memorandum, p. 6 (citing Mo.Rev.Stat. §213.111)). Therefore, Vi-Jon suggests that Plaintiff's MHRA claim fully comprehends and envelops the remedies provided by common law and supercedes Plaintiff's common law claim. (Memorandum, p. 6). With respect to Title VII, Vi-Jon argues that the MHRA broadens the definition of actionable discrimination beyond that of Title VII, such that Plaintiff can obtain any remedy not available to her under Title VII by pursuing a MHRA claim. (Id., p. 7). In other words, Vi-Jon claims that because the MHRA protects the same substantive interests as Title VII, it makes no sense for Plaintiff to have a common law claim arising from a Title VII violation when would be unreasonable to allow a common law claim arising from a MHRA violation. (Defendant Vi-Jon, Inc.'s Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Reply"), ECF No. 17, p. 3).

In response, Plaintiff does not object to Vi-Jon's Motion with respect to the allegations in Count IV that it wrongfully terminated Plaintiff for reporting conduct unlawful under the MHRA.

---

[2]Defendant does not argue that the wrongful termination claim based upon the FLSA would not be cognizable. See Huang v. Gateway Hotel Holdings, 520 F.Supp.2d 1137, 1144-45 (E.D. Mo. 2007) (holding that an employee may maintain a FLSA claim for unlawful discharge in retaliation for complaints of FLSA violations and also a Missouri common law wrongful discharge claim).

(Response, p. 4, n. 2). Based upon Plaintiff's concession, her allegations regarding "the MHRA" are stricken from paragraphs 63, 64, and 65 of the Complaint. (Id.).[3]

With respect to the wrongful termination claim for Title VII violations, Plaintiff argues that a common law wrongful termination claim is not superceded by Title VII because the remedies available under common law are greater than those under Title VII. (Id., p. 4). In addition, Plaintiff notes that Missouri courts have held that the MHRA is in some ways more restrictive than Title VII. (Id., p. 5 (citing Daughtery v. City of Maryland Heights, 231 S.W.3d 814 (Mo. 2007)). Plaintiff also contends that Defendant's theory ignores the difference between rights and remedies. (Id., p. 5). That is, Plaintiff argues that just because the liability-establishing provisions of the MHRA are broader than Title VII, it does not necessarily provide that the MHRA provides greater remedies than Title VII.

With respect to the wrongful termination claim related to violation of Title VII, the Court finds no basis in law for dismissing Count IV. Vi-Jon argues for a novel interpretation of the law such that Plaintiff cannot have a common law claim based upon a violation of Title VII if such a common law claim is not allowed under MHRA. Defendant, however, provides no authority for this position.[4] Under Title VII, punitive and non-economic damages are capped based upon the number

---

[3] Plaintiff dismisses the MHRA claims on her own volition; the Court does not hold that Plaintiff cannot state a cause of action for wrongful termination for a violation of the MHRA. In fact, a recent decision found such a cause of action cognizable. See Shelton v. Vill. of Bel Nor, No. 4:10-CV-02146, 2011 U.S. Dist. LEXIS 82929, at *9 (E.D. Mo. July 28, 2011)("this Court finds that the MHRA does not preempt a wrongful discharge claim brought under the public policy as set forth in Missouri law").

[4] The Court notes that Vi-Jon does not rely on a series of district court cases holding that "allowing [a] claim for wrongful discharge based on a violation of public policy evinced in [Title VII] would be duplicative and unwarranted." Nichols v. American Nat. Ins. Co., 945 F.Supp 1242, 1246 (E.D. Mo. 1996); see Shelton, 2011 U.S. Dist. LEXIS 82929, at *6-7; Osborn v. Professional Serv. Industries, Inc., 872 F.Supp. 679, 681 (W.D. Mo. 1994) ("[I]f these [public] policies and goals are preserved by other remedies, then the public policy is sufficiently served." (internal citation omitted); see also Gannon v. Sherwood Medical Co., 749 F. Supp. 979, 981 (E.D. Mo. 1990)("There is no need for the Court to imply a cause of action based upon the policies mandated by the ADEA and the Workers' Compensation Act because those statutes contain remedial provisions which

of people the defendant employs. 42 U.S.C. §1981a(b)(3). Based upon this limitation, the Court finds that the statutory remedy under Title VII does not fully comprehend and envelop the remedy provided by common law. Fleshner, 304 S.W.3d at 95; Dierkes, 991 S.W.2d at 668. In addition, at this stage of litigation, the Court holds that just because Plaintiff may not have a claim for wrongful termination arising from violations of the MHRA does not preclude a similar action based upon Title VII violations.[5] See Daugherty, 231 S.W.3d at 819 (quoting Brady v. Curators of Univ. of Mo., 213 S.W.3d 101, 112-13(Mo. App. 2006)) (discussing that the MHRA and Title VII are "coextensive, but not identical, acts" and the MHRA is "in some ways broader than Title VII, and in other ways is more restrictive"); see also Shelton, 2011 U.S. Dist. LEXIS 82929, at *9 (holding that the "MHRA does not preempt a wrongful discharge claim brought under the public policy as set forth in Missouri law"). Accordingly, the Court denies Vi-Jon's Motion to dismiss Count IV with respect to the claim for wrongful termination for reporting violations of Title VII.

       3.      Timeliness of MHRA Claim in Count III

Plaintiff filed her Charge of Discrimination on August 5, 2010.[6] Under the MHRA, a Charge of Discrimination must be filed within 180 days of an adverse employment action. §213.075.1, R.S. Mo. Vi-Jon asserts that any events that occurred outside of that 180-day window, or before

---

provide for direct recovery thereunder."). Notably, all of these cases, with the exception of Shelton v. Vill. of Bel Nor predated the Fleshner v. Pepose Vision Inst., P.C. decision by the Missouri Supreme Court. Therefore, these cases are not persuasive regarding whether Missouri courts would allow a common law cause of action for wrongful termination based upon the public policy in Title VII.

    [5]Again, the Court makes no holding regarding whether Plaintiff has a cognizable claim for wrongful discharge based upon MHRA violations. Plaintiff has dismissed that claim on her own.

    [6]Vi-Jon states that this Court can consider Plaintiff's Charge of Discrimination on a motion to dismiss even though she did not attached the Charge to her Complaint because it is a matter of public record. See Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002)(concluding that an EEOC charge is part of the public record, and thus a motion to dismiss is not converted to one for summary judgment by the attachment of a copy of the EEOC charge).

February 6, 2010, are time-barred. That is, Plaintiff cannot assert a MHRA claim based upon any events that occurred before February 6, 2010, including Plaintiff's suspension from January 29, 2010 through February 4, 2010.

Plaintiff asserts that her suspension is not time-barred under the MHRA because it was part of a continuing violation that included her termination, which was not time-barred. (Response, pp. 6-7). Plaintiff contends that her suspension and termination were not discrete acts, but merely component acts of the same retaliation claim that culminated in her termination. (Id.). At the minimum, Plaintiff argues that discovery is needed to determine whether the adverse employment actions preceding her termination can give rise to liability under the MHRA. (Id.).

The Court finds that there are fact issues regarding whether the suspension and the termination constitute a continuing violation. "Under the 'continuing violation' theory, a plaintiff may pursue a claim for an event that occurred prior to the 180-day statute of limitations for filing a claim of discrimination with the MCHR if the plaintiff can demonstrate that the event is 'part of an ongoing practice or pattern of discrimination' by the employer." Tisch v. DST Sys., No. WD73454, 2012 Mo. App. LEXIS 457, at *10-11 (Mo. Ct. App. Apr. 3, 2012)(citing Pollock v. Wetterau Food Distribution Group, 11 S.W.3d 754, 763 (Mo. App. E.D. 1999)); Treanor v. MCI Telecomms. Corp., 200 F.3d 570, 573 (8th Cir. 2000)("Under the continuing violations doctrine, it tolls the statute of limitations in situations where "a continuing pattern forms due to discriminatory acts occurring over a period of time, as long as at least one incident of discrimination occurred within the limitations period."). "To take advantage of the 'continuing violation' theory, a plaintiff must satisfy a two-part test: (i) 'demonstrate that at least one act occurred within the filing period'; and (ii) show that the current claim of discrimination is part of 'a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination.'" Tisch, 2012 Mo. App. LEXIS 457, at *11 (citing Pollock, 11 S.W.3d at 763); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101,

117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)(Incidents predating the limitations period are time barred unless they can be related to a timely incident as a "series of separate but related acts" amounting to a continuing violation). "If the plaintiff proves both, then 'the 180-day filing period becomes irrelevant . . . [and] [h]e may then offer evidence of the entire continuing violation." Tisch, 2012 Mo. App. LEXIS 457, at *11 (citing Pollock, 11 S.W.3d at 763). The proximity of the dates of Plaintiff's suspensions and termination provides support for Plaintiff's assertion that these claims constitute a continuing violation. See Pollock, 11 S.W.3d at 763 (if a "claim is based upon a series of closely-related, similar events that occurred within the same general time period and stemmed from the same source, it is in the nature of a continuing violation."). Plaintiff's two suspensions occurred on January 29, 2010 and February 4, 2010, and she was terminated on February 9, 2010. The closeness of time of these events creates an issue of fact regarding whether these were discrete acts or a continuous violation. See Treanor, 200 F.3d 570, 573 (when asserting a continuing violation, "the proper focus is upon the time of the discriminatory acts"); cf. Tisch, 2012 Mo. App. LEXIS 457, at *19 (finding that the discriminatory and retaliatory acts constituted discrete acts and not a continuing violation when the plaintiff was demoted in 2003, was denied a transfer in 2005, and denied a promotion in 2006). Moreover, Vi-Jon admitted that "Plaintiff's termination was inseparable from her February 4, 2011 suspension" (Memorandum, p. 8, n. 5) because "Vi-Jon informed Plaintiff on February 4, 2011 that she was 'suspended pending termination,' and therefore that was the date on which she learned of her termination." (Reply, p. 5). A jury must determine whether a continuous violation occurred. Coons v. Mineta, No. 03-5766, 2006 U.S. Dist. LEXIS 80413, at *22-23 (D. Minn. Nov. 2, 2006)(finding that the EEOC complaint was timely from and after the 1998 hiring under the continuing violation doctrine when "although the 1998 hiring and 2002 hiring were arguably discrete acts, [they did] not constitute separate employment practices").

The Court denies Plaintiff's Motion to Dismiss the MHRA claim regarding the suspensions of Plaintiff.

## II.     MOTION TO STRIKE

Subsection 216(b) of the FLSA provides that "[a]ny employer who violates the provision of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."  Section 215(a)(3), the anti-retaliation provision of the FLSA, makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  The parties dispute whether punitive damages constitute part of "such legal or equitable relief" permissible under §216(b)

In its Motion to Strike, Vi-Jon asserts that punitive damages are not available on a FLSA retaliation claim.  Vi-Jon relies primarily on the decision in Tucker v. Monsanto Co., No. 4:06-CV-1815, 2007 U.S. Dist. LEXIS 41806, *10 (E.D. Mo. June 8, 2007); see also Huang, 520 F. Supp. 2d at 1143 (determining that a plaintiff can not recover punitive damages under a FLSA retaliation claim). In Tucker, the plaintiff brought an action asserting that she was fired in retaliation for inquiring about FLSA violations.  Id., at *1. The Tucker court held that punitive damages were not available under the FLSA anti-retaliation provision, noting that the FLSA "permits punitive sanctions for willful misconduct only in a criminal enforcement context."  Id., at *5-6.  Also, the Tucker court, citing the similar statutory language of the ADEA and the FLSA, concluded that the FLSA precludes awarding punitive damages, as in ADEA claims.  Id., at *5; see also Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934 (11th Cir. 2000) ("Given that the evident purpose of

section 216(b) is compensation, we reject plaintiff's argument that 'legal relief' includes punitive damages.")

Other courts, however, that have found that appropriate "legal relief" includes punitive damages. Travis v. Gary Community Mental Health Ctr., Inc., 921 F.2d 108, 111 (7th Cir. 1990)("legal" relief is "commonly understood to include compensatory and punitive damages"), cert. denied, 502 U.S. 812 (1991); see also Wolfe v. Clear Title, LLC, 654 F. Supp. 2d 929, 936 (E.D. Ark. 2009)("The only limitation on the term 'legal relief stated in subsection 216(b) is that it be appropriate to effectuate the purposes of section 215(a)(3) . . . .'"). The Seventh Circuit determined that legal relief includes damages, and because Congress did not limit these damages, punitive damages "are appropriate for intentional torts such as retaliatory discharge." Travis, 921 F.2d at 112; O'Brien v. Dekalb-Clinton Counties Ambulance Dist., No. 94-6121-CV-SJ-6, 1996 U.S. Dist. LEXIS 14636, at *18 (W.D. Mo. June 24, 1996)(holding compensatory and punitive damages are available for violation of the FLSA's anti-retaliation provision); Wolfe, 654 F. Supp. 2d at 936 ("It is contrary to the legislative intent, as expressed in this broadly worded provision, to exclude punitive damages from the relief authorized by subsection 216(b)"); see also Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 68 (1992)(quoting Deckert v. Independence Shares Corp., 311 U.S. 282, 288 (1940)("That a statute does not authorize the remedy at issue 'in so many words is no more significant than the fact that it does not in terms authorize execution to issue on a judgment.'").

The Court agrees with those courts that have found that the FLSA anti-retaliation provision remedy of "legal relief" encompasses punitive damages. The Court finds that punitive damages are authorized under subsection 216(b) to allow an employee "recover any form of legal or equitable relief that might be appropriate to effectuate the purposes of subsection 215(a)(3)." Wolfe, 654 F. Supp. 2d at 937. The Court, therefore, denies Plaintiff's Motion to Strike.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Vi-Jon, Inc.'s Motion to Dismiss (ECF No. 3) is **DENIED**, in part, and **GRANTED**, in part. Plaintiff's allegations regarding "the MHRA" are stricken from paragraphs 63, 64, and 65 of the Complaint. The Motion to Dismiss is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendant Vi-Jon, Inc.'s Motion to Strike Plaintiff's Prayer for Punitive Damages (ECF No. 5) is **DENIED**.

Dated this 22nd day of May, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE